Judge Coai.tee.
From the statement in the bill itself, the plaintiff’s first settlement on the land in controversy was not under the faith of Walker’s propositions to settlers; though he says that after seeing those proposals, he contented himself to live on and cultivate the land for several years. He did not, however, intend to purchase as much land as he now claims; on the contrary, says he objected to purchase so much, but Walker would not let him have any unless he took the whole ; to which, on Walker’s saying he would make the matter easy, and take property, he finally assented. When this conversation between him and Walker took place is not stated ; nor does it anywhere appear. From the quantities for which taxes were paid, it would seem that 300 acres was the quantity the plaintiff first contemplated taking ; and this was all he claimed from 1793 until 1799. Yet his witness, Jacob Murrell, says that, in 1793, Dr. Walker told him he had given to the plaintiff, when last in that country, the preemption for 1,000 acres! Why did he not, then, pay taxes for that quantity ? But, even in 1800, he is charged with only five hundred acres. Yet it is said that in April, 1800, he purchased from Francis Walker. He had probably directed an extension of his claim, on the commissioners’ books, as far as 500 acres before Francis Walker went to that country; and, in 1801 and 1802. he is charged with 840 acres, the quantity sold by Francis Walker, When D,r. Walker had been last in that *360 country, next preceding the year 1T93, (at which time, i£ is said, the contract with him took place,) does not ap-* pear; and it may be that it was after the statute to pre« vent frauds and perjuries was in force. The plaintiff, therefore, ought to have stated and proved the time more precisely than he has done; in order to show that his case did not come within the influence of that statute, even as to Thomas Walker.
But, with respect to Francis Walker, the contract with him is since the statute; and was reduced to writing. It is said, however, that a very important verbal condition accompanied that written contract, whereby, at any future day, it could be done away. But such condition, forming, as it is said, part of the contract, ought to have been reduced to writing, as well as the principal contract itself. Otherwise, the statute, which requires a writing, would be completely evaded, if verbal conditions, totally changing its nature, are to be set up as part of the contract. It would be contrary to the statute, therefore, to admit of such evidence, unless there was clear proof that such condition’s not being introduced into' the writing was superinduced by fraud.
But it is said the plaintiff does not claim under the" contract with Francis Walker, but under that made with Thomas Walker. To this I answer, first, that it does not appear that that, even, Was made prior to the statute; but the reverse is presumable from the circumstances above stated. But, if that contract was before the statute, how would the case stand, stripped of what is said to be the verbal agreement of Francis Walker ? It would be this, that the plaintiff, about the year 1773, took possession of, or settled on, part of the lands of Thomas Walker; that, some time afterwards, Walker agreed to sell him a quantity, supposed to be 1,000 acres, at 111. per hundred ; that he neither gave a bond for the price, ascertained the quantity, or took one for the title; (nor does it sufficiently appear that he ever paid a cent for it;) *361 and even had a smaller quantity taxed to him on the commissioners’ books than he now claims to have purchased; that, after the death of Thomas Walker, he voluntarily purchased the land from his devisee, paid him 225/, (a sum greater than would have been due for the 850 acres, under the alleged contract with Thomas Walker,') and gave his bonds, and a deed on the land to secure the balance. Would not all these acts and omissions preclude him, at this day, from setting up this stale, verbal agreement with Thomas Walker, so as to set aside his subsequent written agreement with Francis f The plaintiff, therefore, must make out a case for a court of equity by means of the verbal condition said to be entered into with Francis Walker. To admit of such proof, without proof that the non-reduction of that condition to writing was induced by fraud, I think would open a door intended to be shut by the statute.
I think the case of Vance v. Walker, for the quantity claimed beyond the 300 acres, was a case as strong, or stronger, for that plaintiff, than this is for the present plaintiff, as to the 850 acres he claims ; and that that case is conclusive as to this.
The decree must, therefore, be reversed.
Judge Cabell.
This case comes completely within the principles settled in this court in the case of Walker v. Vance, 3 H. & M. p. 288. I am therefore of opinion, that the decree of the chancellor be reversed.
Judge Brooke.
This, case comes clearly within the rule laid down by this court in the case of Vance v. Walker. There is certainly no proof of fraud in obtaining the deed of trust, nor of mistake in the execution of it. The important question in controversy seems to be whether, at the time of executing that deed, there was an effectual agreement between the parties that, if at any time after-wards, the appellee could prove a prior agreement with *362 the father of the appellant of a different nature from the one which was the basis of the deed of trust, and going to avoid it, in that Gase the deed should not be a bar to such agreement, and that the appellee should have the full benefit of it. The proof offered of the alleged prior agreement is not, in my opinion, conclusive, to establish it; but, if it were, the principle is settled by the case before referred to, that proof of any agreement which would operate as a proviso to a deed solemnly executed, must be in writing. None of the evidence in this case is of that character. I am therefore of opinion, the decree of the chancellor must be reversed.
Judge Roane.
In conformity to the decision of the court in the case of Vance v. Walker, I concur that this decree should be reversed; my own opinion, however, is otherwise, for the reasons assigned by me in that case, though, perhaps, this is rather a weaker case than that.
Judge Fleming.
I have examined this record with great attention, and discovernothing to distinguish it, in principle, from the case of Vance v. Walker ; and, though the evidence, in the case before us, is more copious, it is of the same complexion and character with that adduced by Vance ; which varies the two cases in some immaterial circumstances only; and, in my conception, is inadmissible to annul a solemn contract, deliberately entered into, committed to writing, and signed, and sealed by the parties. The admission of oral testimony, for such a purpose, would* in my apprehension, be a virtual repeal of one of the most wise and beneficial acts in our statute-book.
The grounds, or reasons, on which this court decided the case of Vance v. Walker, are so cogent, explicit, and conclusive to my mind, that a volume written on the subject would throw no new light upon the cause; and I shall only add my opinion that the decree ought to be *363 reversed, the injunction dissolved, and the bill dismissed with costs, ,
Decree unanimously reversed, and bill dismissed.